UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INFORMATION NO. |
| | ) | CR417-203 |
| v. | ) | VIO: 18 U.S.C. § 371 |
| | ) | Conspiracy to Commit |
| DAVID R. GREENLEE | ) | Securities Fraud, Wire |
| | ) | Fraud, Mail Fraud, and |
| | ) | Money Laundering |
| | ) | |
| | ) | Forfeiture Allegations |

THE UNITED STATES ATTORNEY CHARGES:

Introduction:

At all times material to this Information:

1. TexStar Energy Corp. ("Texstar") was a Texas-based business, formed in or about 2012 with a business address in Luling, Texas. Texstar purported to be an oil and natural gas exploration company that offered and sold investments in oil and natural gas projects in Texas.

2. Southern Energy Group, Inc. ("SEG") was a Tennessee-based business, formed on January 2, 2013, with a business address in Gallatin, Tennessee. SEG purported to be an oil and natural gas exploration company that offered and sold investments in oil and natural gas projects in Texas and Oklahoma.

3. TennStar Energy, Inc. ("Tennstar") was a Tennessee-based business, formed on December 20, 2013 under the name of Black Gold Resources, Inc. Tennstar maintained a central office in Hendersonville, Tennessee, and a second office in Lauderdale-by-the-Sea, Florida. Tennstar purported to be an oil and

1

natural gas exploration company that offered and sold investments in oil and natural gas projects in Texas, Oklahoma, and Kansas.

4. The investments offered by Texstar, SEG, and Tennstar were securities, as that term is defined in Title 15, United States Code, Section 77b(a)(1). The investments were fractional undivided interests in oil, gas, and mineral rights. The investments were also investment contracts, because investors provided money to fund a common enterprise, and expected to receive an investment return generated by the entrepreneurial efforts of others associated with Texstar, SEG, and Tennstar.

5. Defendant **David R. Greenlee** ("**Greenlee**") lived in Gallatin, Tennessee, was Director of Client Services at Texstar, and, aided and abetted by others, operated and controlled SEG, and assisted in the operation of Tennstar.

6. From 2012 through February 2016, in the Southern District of Georgia and elsewhere, Texstar, SEG and Tennstar utilized the internet, radio, or television to advertise opportunities to invest in Texstar, SEG and Tennstar oil development projects. In written investment materials sent to investors, and during telephone calls with prospective investors, **Greenlee** and others made repeated false statements to, and withheld material information from, investors in order to induce investors to invest in Texstar, SEG, and Tennstar's oil development projects. Among other things, **Greenlee** and others used false identities during telephone calls with investors; made false statements to investors about the success of past development projects; made false statements to investors about the development, risks, and profitability of current oil development projects; provided false information to

investors during phone calls and in investment materials about the background and experience of the management team of SEG and Tennstar; failed to disclose that **Greenlee** and others directly and indirectly operated and influenced control at Tennstar and SEG; and failed to disclose that key individuals associated with Texstar, SEG and Tennstar, including **Greenlee**, were convicted felons and/or had been subjected to regulatory action for involvement in investment fraud schemes. Through these false statements and material omissions, **Greenlee** and others induced investors to invest more than $20 million in Texstar, SEG and Tennstar oil development projects, which money was misappropriated by **Greenlee** and others.

COUNT ONE
18 U.S.C. § 371
*Conspiracy to Commit Securities Fraud, Wire Fraud, Mail Fraud and Money Laundering*

7. Paragraphs 1 through 6 of this Information are incorporated by reference as if fully set forth herein.

8. From in or around 2012 and continuing through February 2016, in the Southern District of Georgia and elsewhere, the Defendant herein, **David R. Greenlee**, did knowingly and willfully combine, conspire, confederate, and agree with other persons to commit certain offenses, to wit:

a. Securities Fraud, that is, by use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of a national securities exchange, to directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of a security by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements

of material fact and omitting to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit, in connection with the purchase or sale of securities, all in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

      b.     Wire Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, visual pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343;

      c.     Mail Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1341; and

      d.     Money Laundering, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud and mail fraud, knowing that the transactions were designed in whole and in part to conceal the source, ownership, and control of the proceeds of said specified unlawful activity,

and, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS OF THE CONSPIRACY

9. It was a part of the conspiracy and among its manner and means that **Greenlee** and others would use the internet, radio, or television to advertise opportunities to invest in Texstar, SEG, and Tennstar's oil development projects.

10. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would operate call centers at the offices of Texstar, SEG, and Tennstar, in Tennessee, Texas, and Florida, where salesmen telephoned prospective investors who responded to internet, radio, or television advertisements.

11. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would make telephone calls to potential investors located throughout the United States, to convince investors to invest in Texstar, SEG, or Tennstar's oil development projects.

12. It was further part of the conspiracy and among its manner and means that, with **Greenlee**'s knowledge and approval, **Greenlee** and others would assume false identities when communicating with prospective investors in order to conceal that **Greenlee** and others were convicted felons and/or previously subjected to regulatory action for involvement in investment fraud schemes.

13. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would make other false statements and material omissions during telephone calls with investors about the success of past oil development projects and the development, risks, and profitability of the oil development projects of Texstar, SEG, and Tennstar.

14. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would prepare and cause to be prepared false and fraudulent offering materials, such as private placement memoranda ("PPMs"), for the SEG and Tennstar oil development projects, and that **Greenlee** and others would cause said PPMs to be distributed to prospective investors. These PPMs contained false information about the experience and background of the management of SEG and Tennstar, and failed to reveal the true roles of **Greenlee** and others in the operation and management of SEG and Tennstar.

15. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would send and cause to be sent false and fraudulent PPMs to prospective investors by way of mail or commercial interstate courier.

16. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would direct some investors to send checks to the offices of Texstar, SEG, and Tennstar by way of the United States Postal Service or commercial interstate courier to fund investments in Texstar, SEG, or Tennstar oil development projects.

17. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would direct investors to wire transfer money to accounts held in the name of Texstar, SEG, or Tennstar to fund investments in Texstar, SEG, or Tennstar oil development projects.

18. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would prepare and cause to be prepared correspondence and assessment letters seeking additional funds from investors, which contained false and fraudulent information and material omissions about the status and productivity of SEG and Tennstar oil development projects.

19. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would send and cause to be sent assessment letters and other correspondence to investors which contained false and fraudulent information and material omissions by way of the United States Postal Service or commercial interstate courier.

20. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would steal, misappropriate and unlawfully convert millions of dollars of investor funds, and use that money to pay commissions to themselves, to fix past failing oil development projects, and to pay for their personal expenses.

21. It was further part of the conspiracy and among its manner and means that **Greenlee** and others would make numerous false and fraudulent statements and material omissions to investors in Texstar, SEG, and Tennstar, and to

investigators, in order to conceal the theft, misappropriation, and unlawful conversion of investor funds.

## OVERT ACTS

22. In furtherance of the conspiracy and to effect the objects thereof, the defendant, **David R. Greenlee** and others committed the below-listed overt acts, among others:

    A. On or about June 9, 2014, **Greenlee** had an interstate telephone call with investor R.D. to convince R.D. to invest in an SEG oil development project, and falsely told R.D. that his name was "David Johnson."

    B. On or about June 9, 2014, **Greenlee** sent a text message to co-conspirator C.P., and advised C.P. that he convinced investor R.D. to invest in the SEG oil development project.

    C. In or about 2015, members of the conspiracy caused an advertisement for a Tennstar "can't miss" oil well investment opportunity to be broadcast on Sirius satellite radio within the Southern District of Georgia and elsewhere.

    D. In or about July 2015, co-conspirator S.R. conducted a telephone call with an undercover United States Secret Service agent in Savannah, Georgia, and provided false information to the Secret Service agent about the experience of Tennstar's management, success of past oil well development projects, and development and profitability of a new Tennstar oil development project.

8

E. In or about August 2015, members of the conspiracy caused an advertisement for a SEG "can't miss" oil well investment opportunity to be broadcast on Sirius satellite radio within the Southern District of Georgia and elsewhere.

F. In or about September 2015, co-conspirator B.B. conducted a telephone call with an undercover Secret Service agent in Savannah, Georgia, and provided false information to the Secret Service agent about the experience of SEG's management, success of past oil well development projects, and the development and profitability of a new SEG oil development project.

G. In or about September 2015, by way of Federal Express, **Greenlee** and others caused to be sent a false and fraudulent PPM about an SEG oil development project to an undercover Secret Service mailbox located on St. Simons Island, Georgia.

H. On or about October 27, 2015, co-conspirator D.S. conducted a telephone call with an undercover Secret Service agent in Savannah, Georgia, to convince the undercover Secret Service agent to invest in a Tennstar project. During this telephone call, D.S. made false statements to the undercover agent, including but not limited to falsely identifying himself to the undercover agent as "David Johnson."

I. On or about February 4, 2016, co-conspirator S.R. conducted a telephone call with an undercover Secret Service agent in Savannah, Georgia,

and provided false information to the Secret Service agent about the development and profitability of a Tennstar oil development project.

All done in violation of Title 18, United States Code, Section 371.

## CRIMINAL FORFEITURE

The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense set forth in Count 1 of this Information, the defendant, **David R. Greenlee**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, 1957 or 1960; any property traceable to such property; and any property which constitutes or is derived from proceeds obtained as a result of the offense set forth in Count 1 of this Information.

The property to be forfeited includes, but is not limited to:

    a. **Personal Money Judgment**

        A sum of money equal to (1) the proceeds Defendant obtained directly or indirectly as a result of the offense charged in Count 1 of this Information and (2) the value of all property involved in any transaction or attempted transaction in violation of Title 18, United

States Code, Sections 1956, 1957, and 1960, and all property traceable thereto.

b. **Bank and Investment Accounts**

    i. Bank of America Account Ending in XXXX4473;

    ii. Bank of America Account Ending in XXXX8285;

    iii. Bank of America Account Ending in XXXX2998;

    iv. Bank of America Account Ending in XXXX4674;

    v. Scottrade Bank Account Ending in XXXX7630;

    vi. Scottrade Bank Account Ending in XXXX4347;

    vii. Scottrade Bank Account Ending in XXXX5331; and

    viii. Commonwealth Credit Union Account Ending in XXXX6487

c. **Coins and Currency**

    i. $93,644.00 in U.S. Currency;

    ii. Twenty-Four (24) Piece Sacagawea 2000-2008 coin set;

    iii. One (1) 1968 Israel Reunification coin;

    iv. One (1) 1881 $5.00 Gold MS62 coin;

    v. Ten (10) 1 oz. Silver Eagle coins;

    vi. Forty (40) 1 oz. Silver American Eagle coins;

    vii. Twenty (20) 1 oz. Silver Sunshine Bars;

    viii. Eleven (11) 1 oz. Silver Sunshine Rounds;

    ix. Eleven (11) 1 oz. Silver Masterpiece Bullion North American Wildlife Series coins;

    x. One (1) 2015 1 oz. Gold American Liberty High Relief coin;

    xi. Five (5) 1 G PAMP Gold coins;

    xii. Twenty-Five (25) Piece $1.00 Silver Eagle 1991-2015 coin set;

xiii. One (1) 1923 PCGS Whisker Jaw Peace Dollar;

xiv. One (1) 1833 Half Dime MS63 coin;

xv. One (1) $100.00 George T. Morgan Gold Union coin;

xvi. One (1) 100 oz. Silver Bar;

xvii. One (1) 1923 Peace Dollar coin;

xviii. Two (2) 2015 $1.00 "Chronicle" ANACS Silver coins;

xix. One (1) 1834 $2.50 Gold AU53 coin;

xx. One (1) 1869 PCGS BG-712 MS66 coin;

xxi. One (1) 2012 ¼ oz. Australian Gold coin;

xxii. Two (2) 10 oz. Silver Bars;

xxiii. Two (2) Piece 2013 Silver Eagle Reverse Proof set;

xxiv. Seven (7) Piece Silver Masterpiece Bullion North American Wildlife Series Proof coins;

xxv. One (1) 1929 $2.50 Gold MS63 coin;

xxvi. One (1) 1925 D $2.50 Gold MS64 coin;

xxvii. One (1) 1855 $1.00 Gold AU50 coin;

xxviii. One (1) 1849 $1.00 Open Wreath Gold MS61 coin;

xxix. One (1) 1906 $5.00 Liberty MS62 coin;

xxx. One (1) 2007 First Spouse Gold coin;

xxxi. One (1) 1849 $1.00 Closed Wreath Gold MS61 coin;

xxxii. One (1) 1914 D $5.00 Gold AU58 coin;

xxxiii. One (1) 1862 $1.00 Gold MS62 coin;

xxxiv. Two (2) 1 oz. American Gold Eagle coins;

xxxv. Two (2) ¼ oz. American Gold Eagle coins;

xxxvi. Two (2) 1/10 oz. American Gold Eagle coins;

  xxxvii. One (1) 1881 $5.00 Liberty Gold coin;

  xxxviii. One (1) 1855 $10.00 AU58 coin;

  xxxix. One (1) 1926 $10.00 NGC MS62 coin;

  xl. One (1) 1884 $2.50 PCGS AU55 coin;

  xli. One (1) 1994 1/10 oz. $5.00 American Gold Eagle coin;

  xlii. One (1) 1870 Great Britain Sov. coin;

  xliii. One (1) 1904 Gold 25C Louisiana Purchase coin;

  xliv. One (1) 1831 Bust Half PCGS AU55 coin;

  xlv. One (1) 2015 Silver Canada Maple Leaf Reserve Proof NGC PR70 coin;

  xlvi. One (1) 2014 D $1.00 Native American coin;

  xlvii. One (1) 2015 $1.00 Eisenhower coin;

  xlviii. One (1) 1904 Louisiana Purchase Expo Gold MS63 Token;

  xlix. One (1) 1905 $5.00 Gold MS62 coin;

  l. One (1) 1886 $5.00 Gold MS62 coin;

  li. One (1) 1901 $5.00 Gold MS62 coin;

  lii. One (1) 1897 $5.00 Gold MS62 coin;

  liii. One (1) 1900 $5.00 Gold MS62 coin;

  liv. Five (5) 1986-1990 Silver American Eagle coins;

  lv. One (1) 2015 $1.00 Truman coin; and

  lvi. One (1) 2009 ¼ oz. Australian Gold coin

If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

_____
James D. Durham
Acting United States Attorney

_____
Theodore S. Hertzberg**
Assistant United States Attorney

_____
Brian T. Rafferty**
Assistant United States Attorney
Criminal Division Chief

** denotes co-lead counsel

14